```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROGER SWARTZ, et al.,               :
                                    :       CIVIL ACTION
          Plaintiffs,               :       NO. 21-4330
                                    :
     v.                             :
                                    :
THE BOARD OF TRUSTEES AT THE        :
UNIVERSITY OF PENNSYLVANIA, et al.  :
                                    :
          Defendants.               :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              MARCH 23, 2022

Before the Court are three motions to dismiss the complaint filed by pro se Plaintiff, Roger Swartz, which he filed on his own behalf and on behalf of his children. The motions to dismiss were filed by the three groups of Defendants: (1) "the Penn Defendants," consisting of the Board of Trustees at the University of Pennsylvania, Amy Gutmann, and Scott Diamond; (2) "the RBC Defendants," consisting of Reaction Biology Corporation, Haiching Ma, Kurumi Horiucki, Robert Hartman, and Conrad Howitz; and (3) "the Princeton Defendants," consisting of the Trustees of Princeton University, David MacMillan, Abigail Doyle, and Diane Carrera.

Swartz's September 30, 2021 complaint and November 30,

2021 sealed additional count[1] span 82 pages and 25 claims,[2] and allege a broad if unclear conspiracy between the Defendants to ruin Swartz's and his family's lives. The actual legal theories raised by Swartz are largely indiscernible or legally incognizable. This alone warrants dismissal under Federal Rule of Civil Procedure 8 for failure to provide a "short plain statement" which fits the allegations to the elements of recognized causes of action. Fed. R. Civ. P. 8(a)(2). However, Swartz's complaint must also be dismissed for a several of other reasons, most importantly because his claims are time-barred.

## I.    FACTUAL AND PROCEDURAL HISTORY[3]

In July 2008, Swartz enrolled as a graduate student at Princeton University and was assigned to Defendant David MacMillan as a lab assistant. Swartz and MacMillan had various disagreements and, in November 2008, MacMillan asked Swartz to leave the lab and find a new advisor. While moving his belongings from the lab, Defendant Mark Scott, another student,

---

[1] The parties dispute whether the sealed additional count was properly served. However, as discussed below, because Swartz brought the additional count on behalf of his child, he cannot maintain it.

[2] Swartz lists twenty-seven counts, however, the complaint lacks counts twelve and twenty-six.

[3] The facts in the complaint are taken as true and viewed in the light most favorable to Swartz. DeBenedictis v. Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007).

told Swartz that there would be trouble if Swartz did not beg MacMillan to take him back. Swartz viewed this as a threat.

Rather than beg MacMillan, Swartz agreed to work in the lab of Defendant Abigail Doyle, who was also a professor at Princeton. Defendant Diana Carrera, a student working with MacMillan, had lunch with Doyle one afternoon and, according to Swartz, turned her against Swartz pursuant to MacMillan's directions. Swartz contends that Doyle then sought to undermine him and his work in Doyle's lab.

Swartz further contends that Doyle told him that she would only recommend him for jobs at labs. Swartz perceived this to mean that: (1) "Abigail Doyle essentially was stating to Roger Swartz that she would make misrepresentations or fraud . . . by controlling how Roger Swartz would be portrayed;" (2) "Abigail Doyle essentially told Roger Swartz that he could try to apply and interview for other employment opportunities, but they would not result in an actual job;" and (3) "Abigail Doyle essentially stated to Roger Swartz that she would only present him in a light to get specific [job] types clearly implying that she would portray him in a different light to prevent him from obtaining another type of job." Compl. ¶ 52, ECF No. 1. Swartz contends that Doyle last reiterated this position to him on March 26, 2019.

3

In 2010, after a disagreement regarding Swartz's thesis, Doyle told him that she could no longer be his advisor. Swartz further claims that Doyle and other unspecified individuals at Princeton spread false information about Swartz that hindered him from finding employment.

Swartz enrolled at Drexel University in the fall of 2010, but claims "the situation at Princeton found its way into the graduate program at Drexel University. This ultimately caused Roger Swartz to have to leave the University. . . ." Compl. ¶ 33, ECF No. 1. Drexel is not a Defendant in the case. Thereafter, Swartz began a test prep and tutoring business. Swartz claims that his clients often acted suspiciously and suggests they were planted by the Princeton Defendants or the University of Pennsylvania ("Penn") to injure Swartz.

Swartz was not a student at Penn nor did he work there. However, he claims that Doyle's mother, Defendant Amy Gutmann, who was the president of Penn, acted to further Doyle's grudge and to injure Swartz and his family. Swartz also contends that individuals at Penn hacked his computer and phone to obtain unspecified personal information. Swartz further alleges that the Penn Defendants blocked his employment opportunities in unspecified ways.

In 2011, Swartz's ex-wife, E.S., was hired by Reaction Biology Company ("RBC"). Swartz claims that RBC hired her in

4

order to injure Swartz and his family. Specifically, Swartz alleges that Defendant Scott Diamond, a faculty member at Penn and co-founder of RBC, directed Defendant Haiching Ma to hire E.S. to work at RBC on a "bogus" project at Gutmann's behest. At RBC, Swartz alleges that E.S. was verbally abused by Defendant Kurumi Horiuchi and sexually harassed by Defendant Robert Hartman. Swartz styles these allegations as "employment rape." Swartz further claims that Defendant Conrad Howitz also engaged in unspecified "employment rape" activities against E.S. while working at RBC. E.S.'s employment at RBC ended in 2012.

Swartz contends that all of these events occurred prior to the end of 2013 with the exception that Doyle last told Swartz on March 26, 2019 that she would only provide him recommendations for lab-based jobs.

Swartz filed his complaint on his own behalf and on behalf of his children on September 30, 2021. E.S., Swartz's ex-wife, is not a party. Thereafter, the Defendants filed their three motions to dismiss.

## II. LEGAL STANDARD

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering such a motion, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them

5

in the light most favorable to the non-moving party." DeBenedictis, 492 F.3d at 215 (internal quotation marks omitted).

To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).

### III. DISCUSSION

#### A. Preliminary Matters

The Court concludes that Swartz's claims are time-barred. But, before discussing that conclusion, the Court must address two other matters that are detrimental to the complaint.

First, as a pro se plaintiff, Swartz may not bring claims on behalf of his children.

> The right to counsel belongs to the children, and, under the cases from the Second and Tenth Circuits . . . the parent cannot waive this right.
>
> In accord with [these decisions], we hold that Osei-Afriyie was not entitled, as a non-lawyer, to represent

his children in place of an attorney in federal court. Osei-Afriyie by Osei-Afriyie v. Med. Coll. of Pa., 937 F.2d 876, 883 (3d Cir. 1991). Thus, the claims Swartz purports to raise on behalf of his children must be dismissed.

Second, Swartz's overarching claim seems to be that the Defendants' actions violated his Thirteenth and Fourteenth Amendment rights. However, Swartz has failed to adequately allege that any of these Defendants are state actors, which is required to maintain constitutional claims under 42 U.S.C. § 1983. Rendell-Baker v. Kohn, 457 U.S. 830, 835 (1982) ("A claim may be brought under § 1983 only if the defendant acted 'under color' of state law").

Swartz merely alleges that the Princeton and Penn Defendants receive funds from the government which allows them "unbridled liberty" to "to wield power they would not otherwise have." See Resp. to Princeton Def.s' Mot. at 42-43, ECF No. 68-1. The Court concludes that such allegations are insufficient to pursue a claim under Section 1983 for a constitutional violation. The Supreme Court has repeatedly held that extensive regulation or even total public funding do not necessarily make otherwise private actors into public actors. See Blum v. Yaretsky, 457 U.S. 991, 1004-05 (1982); Rendell-Baker, 457 U.S. at 840-43; Jackson v. Metro. Edison Co., 419 U.S. 345, 358–59 (1974). Thus, Swartz's constitutional claims must be dismissed.

B. **Statutes of Limitations**

Swartz filed his complaint on September 30, 2021. It is difficult to divine the legal theories under which Swartz is attempting to proceed. However, under any reasonably imaginable theory, Swartz's claims are time-barred because he alleges that the underlying acts occurred before the end of 2013. The only allegation after this time period is that Doyle reiterated to Swartz on March 26, 2019 that she would only provide him recommendations for lab-based jobs.

To the extent Swartz is alleging claims of fraud or negligent misrepresentation, computer hacking, defamation, intention infliction of emotional distress, or another personal injury tort, all of the alleged conduct, except the 2019 statement, fall outside of any possible statute of limitations.[4]

---

[4] Penn and RBC are located in Pennsylvania while Princeton is located in New Jersey. Under either state's laws, Swartz's claims are time-barred. Pennsylvania and New Jersey have a two-year statute of limitations for personal injury claims, including intentional infliction of emotional distress. 42 Pa. Cons. Stat. Ann. § 5524(7); N.J. Stat. Ann. § 2A:14-2. Defamation has a one-year statute of limitation in both states. 42 Pa. Cons. Stat. Ann. § 5523; N.J. Stat. Ann. § 2A:14-3. The Computer Fraud and Abuse Act has a two-year statute of limitations. 18 U.S.C. § 1030(g). Finally, Pennsylvania has a two-year statute of limitations for fraud while New Jersey's limit is six years. 42 Pa. Cons. Stat. Ann. § 5524(7); N.J. Stat. Ann. § 2A:14-1. Assuming New Jersey law applies to Swartz's claim regarding Doyle's 2019 statement, which Swartz has clarified is a species of fraud claim, it is the only allegation that is not facially time-barred.

Moreover, while the Court has already explained why Swartz's constitutional claims fail, the Court notes that it

Moreover, and as discussed more fully below, Doyle's 2019 reiteration of her position that she would only recommend Swartz for employment in labs does not affect the timeliness of that claim since Swartz first learned of this alleged harm in 2010, when Doyle first informed him of her position.

In his complaint, Swartz asserts that "[t]his case is within the statute of limitations since Roger Swartz has only recently within the last 6 months become familiar with the law (see sealed document for a more extensive explanation) as it pertains to this suit."[5] Compl. ¶ 23, ECF No. 1. Ignorance of the law, however, does not toll the statute of limitations. Ross v. Varano, 712 F.3d 784, 799–800 (3d Cir. 2013) ("The fact that a petitioner is proceeding pro se does not insulate him from the 'reasonable diligence' inquiry and his lack of legal knowledge or legal training does not alone justify equitable tolling.").

In his response briefs, Swartz also erroneously argues that Section 1983 claims, and their underlying tort claims, have no statute of limitations. This theory is simply incorrect. Randall, 919 F.3d at 198 ("Section 1983 has no statute of limitations of its own . . . . Rather, it borrows the underlying

---

would have applied the applicable statute of limitations for personal injury torts to the constitutional claims since Section 1983 does not provide its own statute of limitations. Randall v. City of Phila. Law Dep't, 919 F.3d 196, 198 (3d Cir. 2019).

[5] The Court notes that Swartz's sealed additional count does not expand on this theory.

9

state's statute of limitations for personal-injury torts.")

Finally, Swartz argues generally that the discovery rule, continuing violations doctrine, or equitable tolling should apply to his claims, but fails to argue these theories with any specificity. Nonetheless, the Court will briefly address the three doctrines.

"[U]nder the discovery rule the statute of limitations begins to run 'when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim.'" Stephens v. Clash, 796 F.3d 281, 288 (3d Cir. 2015) (quoting William A. Graham Co. v. Haughey, 568 F.3d 425, 433 (3d Cir. 2009)). Swartz unconvincingly argues that he could not have been aware of his injuries prior to filing the suit because "[i]n some sense there was a loss of full consciousness by plaintiff Roger Swartz and by E.S. because full consciousness is something that is enabled through having ones [sic] 42 U.S.C. § 1983 rights fully accessible." Resp. to Penn Def.s' Mot. at 14, ECF No. 13.

Despite this claim, the Court concludes that based on the allegations in his complaint, Swartz knew or should have known of the alleged injuries before the end of 2013. "A plaintiff's ignorance regarding the full extent of his injury is irrelevant to the discovery rule's application, so long as the plaintiff discovers or should have discovered that he was

10

injured." Stephens, 796 F.3d at 288. This maxim also explains why Doyle's 2019 reiteration does not save Swartz's claim: Swartz knew of Doyle's position, and, thus, the alleged injury, since 2010.

"To establish that a continuing violation theory should apply to their case, the Plaintiffs must show (1) that at least one act occurred within the statutory period, and (2) that prior conduct was not isolated or sporadic, but was part of a continuing, ongoing pattern." King v. Twp. of E. Lampeter, 17 F. Supp. 2d 394, 416 (E.D. Pa. 1998), aff'd, 182 F.3d 903 (3d Cir. 1999) (citing West v. Phila. Elec. Co., 45 F.3d 744, 754–755 (3rd Cir. 1995)). "However, if the prior events should have alerted a reasonable person to act at that time, the continuing violation theory will not overcome the relevant statute of limitations." Id. (citing Hicks v. Big Brothers/Big Sisters of America, 944 F. Supp. 405, 408 (E.D. Pa. 1996)). Here, the only alleged act arguably inside a relevant statutory period is Doyle's 2019 statement. As discussed, the statement is a reiteration of a position Doyle gave Swartz in 2010. Doyle's prior statements on this issue, to the extent actionable, should have "alerted a reasonable person to act." Id.

"Equitable tolling of a statute of limitations may apply where a complaint succeeds a filing deadline through either the complainant's benign mistake or an adversary's

11

misconduct." United States v. Midgley, 142 F.3d 174, 178–79 (3d Cir. 1998) (citing Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 96 (1990)). "[E]quitable tolling may be appropriate if (1) the defendant has actively misled the plaintiff, (2) if the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." Id. at 179 (quoting Kocian v. Getty Refining & Marketing Co., 707 F.2d 748, 753 (3d Cir. 1983)).

Swartz argues that his prior ignorance of the law and the fact that the alleged Fourteenth Amendment violations robbed him of his "will to act," similar to "a person that has been knocked unconscious and placed in a coma without any legal representation. . . . That is[,] Plaintiff's perception of these rights were in a state of coma—even though other aspects of their consciousness were active—due to their rights being curtailed by [the] Defendants." Resp. to Penn Def.s' Mot. at 13-14, ECF No. 13. Again, ignorance of the law will not act to trigger equitable tolling. See Ross, 712 F.3d at 799–800. Moreover, the Court finds no merit in Swartz's theory that Fourteenth Amendment injuries create an extraordinary situation where individuals are stripped of their volition to seek redress. Instead, the Court finds that Swartz has not diligently pursued his rights, allowing any applicable statutes of

12

limitation to run out on his claims.

### C. Fraud Claim based on Doyle's 2019 Statement

As stated, Swartz has failed to adequately plead any of his claims. However, the Court finds it unnecessary to delve into the merits of most of Swartz's claims given that they are time-barred. Nonetheless, since Doyle's 2019 statement is facially within the six-year New Jersey statute of limitations for fraud (but still not actionable as discussed above), and out of an abundance of caution, the Court will briefly discuss the merits of this claim, which is found in Count II of the complaint. Count II is entitled:

> After no longer being an employee or paid graduate Student of Princeton University Abigail G. Doyle undermined the employment rights of Roger B. Swartz by verbally stating to him that she would confine him to particular jobs opportunities restricting recommendations that were limited to working in a lab thereby undermining the legal rights of Roger Swartz and also verbally stating that she would fradulently [sic] misrepresent Roger Swartz and subject him to a form of involuntary servitude violating his 13th amendment rights.

Compl. at p. 41, ECF No. 1.

Swartz alleges in Count II that "[w]hen Roger Swartz requested Abigail Doyle write him a letter of recommendation for employment opportunities Abigail Doyle verbally told Roger Swartz she would only support him to work in a lab restricting him from other opportunities." Id. ¶ 51. Swartz perceived this to mean that: (1) "Abigail Doyle essentially was stating to

13

Roger Swartz that she would make misrepresentations or fraud . . . by controlling how Roger Swartz would be portrayed;" (2) "Abigail Doyle essentially told Roger Swartz that he could try to apply and interview for other employment opportunities, but they would not result in an actual job;" and (3) "Abigail Doyle essentially stated to Roger Swartz that she would only present him in a light to get specific [job] types clearly implying that she would portray him in a different light to prevent him from obtaining another type of job."[6] Id. ¶ 52. Swartz alleges that Doyle last reiterated this stance on March 26, 2019. Id. In his response briefs, Swartz has clarified that this is a fraud claim.[7]

      The parties agree that under New Jersey law, common-law fraud requires: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors,

---

[6] That Swartz uses the word "essentially" in connection with these three statements indicates to the Court that Doyle did not actually make these utterances.

[7] See Resp. to Princeton Def.s' Mot. at 18, ECF No. 68-1 ("Princeton University defendants' motion can leave one with the impression that the fraud claim is limited to 'Doyle informed him she would only recommend him for lab work — the basis for his fraud claim' (Dkt. No. 51-1 pp. 6 ¶¶ 2). But that does not capture the other element of this specific instance of fraud . . . ."

691 A.2d 350, 367 (N.J. 1997). Moreover, Federal Rule of Civil Procedure 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires a plaintiff to plead the "who, what, when, where and how" underlying the allegedly fraudulent conduct. In re Rockefeller Ctr. Properties, Inc. Sec. Litig., 311 F.3d 198, 217 (3d Cir. 2002) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1422 (3d Cir. 1997)).

Swartz unsuccessfully attempts to shoehorn his allegations into these factors by arguing that Doyle's statement that she would only recommend him for lab-based jobs is a material misrepresentation. It is not. Swartz has not alleged that Doyle knew he was qualified for non-lab positions, that Doyle ever told a specific prospective employer that Swartz was not qualified for non-lab positions, or that the prospective employer relied on this misrepresentation and did not give Swartz a job because of the misrepresentation. Without such allegations, Swartz's fraud claim is futile. To the extent that Doyle's opinion was that Swartz was best suited for positions in a lab, a legitimate opinion cannot be fraud. See, e.g., Alexander v. CIGNA Corp., 991 F. Supp. 427, 435 (D.N.J.), aff'd, 172 F.3d 859 (3d Cir. 1998) (providing that "[s]tatements as to future or contingent events, to expectations or probabilities,

15

or as to what will or will not be done in the future, do not constitute misrepresentations, even though they may turn out to be wrong" and "statements that can be categorized as 'puffery' or 'vague and ill-defined opinions' are not assurances of fact and thus do not constitute misrepresentations.").

**IV. CONCLUSION**

Swartz's claims against all the Defendants are time-barred and, thus, any amendment to his claims would be futile. Therefore, the Court will grant the Defendants' motions and dismiss Swartz's complaint with prejudice.

An appropriate order follows.